IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.

LIN YANG

SEALED INDICTMENT

1:20CR46 AW/GRJ

THE GRAND JURY CHARGES:

## COUNTS ONE THROUGH SIX

### A. INTRODUCTION

At all times material to this Indictment:

1. The National Institutes of Health (NIH) was an agency of the U.S. Department of Health and Human Services (HHS), which was part of the executive branch of the United States government. The NIH awarded funding through competitive grants to American universities, medical schools, and other research institutions to enhance health, lengthen life, and reduce illness and disability and to facilitate the development and improvement of medical technologies in the United States.

2. In order to receive NIH funding, universities and other research institutions were required to submit a detailed application describing, among other things, the purpose and scope of the proposed research, the amount of

funding requested, the names of the principal participants conducting the research, and how the funding would be used. Both during the application process, and periodically after awards were made, the principal investigator (PI) with the institution receiving the award, was required to disclose to NIH all "Other Support." Other Support included all financial resources, whether Federal, non-Federal, commercial or institutional, available in direct support of an individual's research endeavors, including but not limited to research grants, cooperative agreements, contracts, and institutional awards, regardless of any monetary value and regardless of any connection to the institution receiving the current grant. This requirement included reporting ownership, or interest in, foreign entities and research companies, as well as foreign research contracts.

3. Additionally, the PI was required to report to the institution receiving the NIH award any significant financial interests that existed prior to the commencement of the award, as well as any that arose throughout the duration of the award. Significant financial interests included anything of monetary value, including but not limited to salary or other payments for services (e.g., consulting fees or honoraria); equity interests (e.g., stocks, stock options or other ownership interests); and intellectual property rights (e.g., patents, copyrights, and royalties from such rights). The institution then would

determine whether there was a financial conflict of interest that needed to be reported to, and reviewed by, NIH. NIH would then determine whether the grant personnel or conditions of the grant needed to be altered, or whether the grant needed to be terminated.

4. Between August 2014 and December 2019, the defendant, **LIN YANG**, was an Associate Professor in the Department of Biomedical Engineering at the University of Florida in Gainesville, Florida (UF). Prior to August 2014, he was an Assistant Professor at the University of Kentucky. As a faculty member at UF, **YANG** owed a duty of loyalty and candor to UF at all times and was aware that any other support (to include foreign research support and ownership, or interest in, foreign entities and companies), and all conflicts of interest, needed to be reported to UF and NIH, which sponsored his research at UF. As part of its reporting requirements, UF required professors and researchers, like **YANG**, to disclose any potential and actual conflicts of interest, including income from other sources.

5. When **LIN YANG** obtained employment at UF, his research involved biomedical imaging and informatics. While employed at the University of Kentucky, **YANG** obtained a grant from NIH to develop and disseminate an imaging informatics tool for muscle known as "MuscleMiner." When **YANG**

3

was hired by UF, the NIH grant, which had not yet been funded, was transferred to UF. **YANG** thereafter performed research funded by the NIH grant at UF.

6. The NIH grant period began September 2014 and was scheduled to continue through July 2019, with the award totaling $1,760,906. **YANG** requested a 12-month extension in the summer of 2019, which would have extended the grant period into 2020.

7. The grant award was provided by NIH to UF, which administered the grant monies. **LIN YANG** was the PI for the grant. As the PI, **YANG** was the primary individual responsible for the preparation, conduct, and administration of the research grant in compliance with applicable laws and regulations under Federal law and institutional policies governing the conduct of sponsored research. As the PI, **YANG** initiated reimbursement requests to UF for research related expenses, and UF disbursed payments accordingly from funds distributed to UF by NIH.

8. As the PI, **LIN YANG** was also responsible for filing annual Research Performance Progress Reports (RPPRs) with NIH concerning the status of the grant. **YANG** submitted the RPPRs through an online system maintained on NIH's servers, which were located outside of Florida. Pursuant to Federal regulation and NIH policy, **YANG** was required to disclose on the RPPRs any changes to his other support, including but not limited to research support from foreign governments or

4

entities. **YANG** was also required to disclose any significant financial conflicts of interest and any affiliations with foreign countries, organizations, or entities.

9. To further its national strategic development goals, the People's Republic of China (PRC) established "talent plans" to encourage the transfer of original ideas, technology, and intellectual property from foreign institutions, such as American universities, to PRC institutions. The PRC's talent plans offered competitive salaries, state-of-the-art research facilities, and honorific titles to entice experts in Western countries to bring their knowledge and experience to the PRC.

10. Each PRC talent plan included the same basic requirements: applicants were required to have experience in cutting-edge foreign science or engineering research; possess a degree from a prestigious university; and have several years of overseas work or research experience at prestigious universities, research institutes, corporations, or well-known enterprises. The "Thousand Talents Program" (TTP) was one such talent plan.

11. In 2016, while conducting NIH-funded research at UF, **LIN YANG** applied for the PRC's TTP. Northwestern Polytechnic University, located in Xi'an, China, sponsored **YANG's** TTP application. No later than January 2017, **YANG** was selected to participate in the TTP. **YANG** failed to disclose to UF and NIH his application and selection for the TTP and his affiliation with Northwestern

Polytechnic University, and he made false statements to NIH when submitting his annual RPPRs by denying any such foreign awards, applications, or affiliations.

12. No later than June 2016, **YANG** caused to be established a business operating in China known as "Deep Informatics." **YANG** did not disclose the company, or his affiliation with it, to UF or NIH.

13. In January 2019, UF's College of Engineering required all faculty, including **LIN YANG**, to provide, in writing, updated disclosures concerning activities with foreign entities in China and certain other countries. **YANG** provided to UF a written response that falsely stated that he had no affiliation with any business or entity or university and omitted any reference to his company in China or his participation in the PRC's TTP in connection with Northwestern Polytechnical University, a Chinese university.

## B. THE CHARGE

Between on or about March 1, 2016, and on or about December 31, 2019, in the Northern District of Florida and elsewhere, the defendant,

## LIN YANG,

did knowingly and willfully devise, and intend to devise, a scheme to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises and half-truths, and by omissions and concealment of material facts with a duty to disclose, and for the purpose of

executing such scheme, did cause wire communications to be transmitted in interstate and foreign commerce.

## C. SCHEME TO DEFRAUD

It was part of the scheme to defraud that:

1. **LIN YANG** used the NIH research grant at UF to assist, promote, and advance his business, research, and financial interests in China.

2. **LIN YANG** repeatedly made false statements to NIH and UF, and failed to disclose and concealed his conflicts of interest related to the NIH grant concerning his creation, and operation of, Deep Informatics, a Chinese company, and his application for, and participation in, the PRC's Thousand Talents Program, which was sponsored by, and connected to, Northwestern Polytechnical University in China.

3. Between in or about March and June 2016, **LIN YANG**, using his UF email account, created a website for a new business known as Deep Informatics in China and sent and received a number of emails concerning his founding of the company and identifying him as the company's Chief Executive Officer (CEO).

4. No later than in or about June 2016, **LIN YANG** caused the establishment of Deep Informatics, a business operating in China.

5. In or about August 2016, **YANG** sent himself a document related to Deep Informatics' business activities in a Chinese city and claiming that the

7

company's products were the result of years of research supported by millions of dollars in U.S. government-funded research.

6. In 2018, **LIN YANG** participated in a Sino-American Pharmaceutical Professional Association conference as the co-founder and director of the board for Deep Informatics.

7. In or about June 2018, **LIN YANG** caused press releases to be issued in China by a firm that invested in Deep Informatics. The press releases outlined **YANG's** involvement as the co-founder and primary source of scientific expertise at Deep Informatics and stated that **YANG's** company had three branches in China in the cities of Hangzhou, Shanghai, and Xi'an.

8. In or about December 2018, **LIN YANG** participated in a YouTube video in which he gave a presentation at Philips Global Breakthrough Day about Deep Informatics' vision and potential partners.

9. In or about June 2016, **LIN YANG** applied for the PRC's TTP. To help prepare his application, on or about May 16, 2016, **YANG** received an email and sample TTP application from a professor at Northwestern Polytechnical University; on or about June 24, 2016, **YANG** received an email from an individual who recommended changes to **YANG's** TTP application to include his plans to work fulltime in China; and on or about June 28, 2016, **YANG,** using his UF account, sent an email to a Rutgers University professor, requesting a letter of recommendation in

support of, and to attach to, his TTP application.

10. On or about November 20, 2016, **LIN YANG** was in Beijing, China, planning for interviews and discussions relating to his PRC TTP application.

11. At a date unknown, but no later than in or about January 2017, the PRC selected **LIN YANG** to participate in the TTP in connection with Northwestern Polytechnical University, and issued an official notice reflecting that **YANG** had been selected as one of the Chinese Communist Party's TTP award recipients.

12. On or about June 13, 2016, **LIN YANG** submitted a RPPR to NIH falsely stating in his answers to questions that there had been (1) no change in "Other Support," in which he should have listed his affiliations and research endeavors with a foreign government, company, entity, or university and institutional awards, and (2) no change to any affiliation with foreign companies or businesses or foreign universities.

13. On or about July 15, 2016, based upon the false statements made by **LIN YANG** in the RPPR submitted on or about June 13, 2016, relating to, and concealing, his activities concerning the creation of his business in China and his application for the PRC's TTP in connection with Northwestern Polytechnical University, NIH issued a Notice of Award to UF, advising that $316,467 had been authorized for disbursement to UF for the grant with **YANG** as the PI.

14. On or about June 15, 2017, **LIN YANG** submitted a RPPR to NIH falsely stating in his answers to questions that there had been (1) no change in "Other Support," in which he should have listed his affiliations and research endeavors with a foreign government, company, entity, or university and institutional awards, and (2) no change to any affiliation with foreign companies or businesses or foreign universities.

15. On or about August 9, 2017, based upon the false statements made by **LIN YANG** in the RPPR submitted on or about June 15, 2017, relating to, and concealing, his activities concerning the creation of his business in China and his application for the PRC's TTP in connection with Northwestern Polytechnical University, NIH issued a Notice of Award to UF, advising that $379,732 had been authorized for disbursement to UF for the grant with **YANG** as the PI.

16. On or about June 15, 2018, **LIN YANG** submitted a RPPR to NIH falsely stating in his answers to questions that there had been (1) no change in in "Other Support," in which he should have listed his affiliations and research endeavors with a foreign government, company, entity, or university and institutional awards, and (2) no change to any affiliation with foreign companies or businesses or foreign universities.

17. On or about September 5, 2018, based upon the false statements made by **LIN YANG** in the RPPR submitted on or about June 15, 2018, relating to, and

concealing, his activities concerning the creation of his business in China and his application for the PRC's TTP in connection with Northwestern Polytechnical University, NIH issued a Notice of Award to UF, advising that $377,571 had been authorized for disbursement to UF for the grant with **YANG** as the PI.

18. On or about January 31, 2019, in response to a request for disclosure from UF, **LIN YANG** falsely denied in writing having any affiliation and receiving any funding in connection with any Chinese entity to include being a "company employee, officer, owner or representative."

19. Between in or about June 2016 and December 2019, while employed at UF in Gainesville, Florida, and while conducting research funded by the NIH grant, **LIN YANG** travelled extensively to China for significant periods of time. During that time, **YANG** traveled to China approximately 27 times and was outside the United States approximately 120 days in 2016, 201 days in 2017, 175 days in 2018, and 235 days in 2019.

20. **LIN YANG** fraudulently obtained approximately $292,875 in salary paid by UF from NIH grant funds for the years 2016 through 2018. **YANG** used some of these monies for the purchase of, and payment for, real property in Tampa, Florida.

21. Based upon his fraudulent misrepresentations and false statements, **LIN YANG** fraudulently caused NIH to provide approximately $1.1 million to UF

11

related to the NIH grant.

## D. WIRE COMMUNICATIONS

On or about the following dates, for the purpose of executing the scheme to defraud, the defendant,

**LIN YANG,**

knowingly did cause wire communications to be transmitted in interstate and foreign commerce as set forth below:

| **COUNTS** | **DATE** | **COMMUNICATION** |
|---|---|---|
| ONE | June 13, 2016 | RPPR submitted electronically to NIH by the defendant |
| TWO | July 15, 2016 | NIH Notice of Award of $316,467 electronically sent to UF |
| THREE | June 15, 2017 | RPPR submitted electronically to NIH by the defendant |
| FOUR | August 9, 2017 | NIH Notice of Award of $379,732 electronically sent to UF |
| FIVE | June 15, 2018 | RPPR submitted electronically to NIH by the defendant |
| SIX | September 5, 2018 | NIH Notice of Award of $377,571 electronically sent to UF |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS SEVEN THROUGH NINE

Paragraphs number 1-13 of Section A and paragraphs number 1-21 of Section C of Counts One through Six are realleged and incorporated herein by reference.

On or about the dates set forth below, in the Northern District of Florida and elsewhere, the defendant,

## LIN YANG,

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the executive branch of the Government of the United States, that is, the National Institutes of Health (NIH), which was part of the U.S. Department of Health and Human Services, in that, related to a NIH grant, the defendant falsely certified in annual Research Performance Progress Reports (RPPRs) the answer "No" in response to the question, "Changes in Other Support - Has there been a change in the active other support of senior/key personnel since the last reporting period?"; whereas, in truth and fact, as the defendant well knew, this statement and representation was false in that the defendant had created, and was operating, a Chinese company known as Deep Informatics and had made an application for, and been selected to participate in, the Chinese Government's Thousand Talents Program connected to a Chinese university, Northwestern Polytechnical University.

| COUNTS | DATE | DOCUMENT CONTAINING FALSE STATEMENTS |
|--------|------|--------------------------------------|
| SEVEN | June 13, 2016 | RPPR submitted electronically to NIH by the defendant |
| EIGHT | June 5, 2017 | RPPR submitted electronically to NIH by the defendant |
| NINE | June 5, 2018 | RPPR submitted electronically to NIH by the defendant |

In violation of Title 18, United States Code, Section 1001.

## COUNT TEN

Paragraphs number 1-13 of Section A and paragraphs number 1-21 of Section C of Counts One through Six are realleged and incorporated herein by reference.

On or about January 31, 2019, in the Northern District of Florida and elsewhere, the defendant,

## LIN YANG,

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations in a matter within the executive branch of the Government of the United States, that is, the National Institute of Healths (NIH), which was part of the U.S. Department of Health and Human Services, in that, the defendant falsely stated to the University of Florida (UF), an institution that had requested and received a NIH grant with the defendant as the PI, and was obligated to disclose to NIH any financial conflicts of interest of any persons involved in the grant research, in a response to a UF request to disclose financial support from

14

foreign entities that: he had not received any compensation from any entity in China and certain other countries during the past twelve months; that he had not visited any entity in China other than on one occasion to make an academic presentation at a Chinese university on May 15, 2018, relating to matters that he had already published; and that he had no affiliation with any entity in China; whereas, in truth and fact, as the defendant well knew, these statements and representation were false in that the defendant had created, and was operating, a Chinese company known as Deep Informatics from which he received compensation; that he had visited entities in China on occasions in addition to the May 15, 2018 academic presentation; and that he had an affiliation in China with his Chinese company, Deep Informatics, and had made an application for, and been selected to participate in, the Chinese Government's Thousand Talents Program connected to a Chinese university, Northwestern Polytechnical University.

In violation of Title 18, United States Code, Sections 1001 and 2.

## CRIMINAL FORFEITURE

The allegations contained in Counts One through Six of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture. From his engagement in the violations alleged in Counts One through Six of this Indictment, the defendant,

**LIN YANG,**

15

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any and all of the defendant's right, title, and interest in any property, real and personal, constituting, and derived from, proceeds traceable to such offenses, specifically, the following real property:

> Real property located at 17207 Talence Court, Tampa, Florida 33647 more particularly described as:
> Lot 7, Block 1, Tampa Palms Area 4 Parcel 23 Phase 1, according to the Plat thereof, recorded in Plat Book 89, Page(s) 46, of the Public Records of Hillsborough County, Florida.

If any of the property described above as being subject to forfeiture, as a result of acts or omissions of the defendant:

    i. cannot be located upon the exercise of due diligence;

    ii. has been transferred, sold to, or deposited with a third party;

    iii. has been placed beyond the jurisdiction of this Court;

    iv. has been substantially diminished in value; or

    v. has been commingled with other property that cannot be subdivided without difficulty,

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c),

to seek forfeiture of any other property of said defendant up to the value of the forfeitable property.

A TRUE BILL:

███████████████
FOREPERSON

DATE 12/15/20

*/s/ L. K.*
LAWRENCE KEEFE
United States Attorney

*/s/ Stephen M. Kunz*
STEPHEN M. KUNZ
Assistant United States Attorney